# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KAREEM RUSSELL, | : | NO. 10-186-1 |
| Defendant. | : | |

## MEMORANDUM

**GENE E.K. PRATTER, J.**                                                                                                                             **APRIL 27, 2011**

Defendant Kareem Russell is charged with possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1). Currently before the Court is Mr. Russell's motion to suppress evidence, a Smith & Wesson Sigma .40 caliber pistol, which officers from the Cheltenham Township Police Department and the Philadelphia Police Department recovered on April 1, 2007 during the execution of a search warrant of 1040 E. Howell Street in Philadelphia. The Court held a hearing on the Motion during which the parties presented evidence and arguments.

For the reasons discussed below, the Court denies Mr. Russell's Motion.

## FINDINGS OF FACT

The following facts are established by the evidence presented and the testimony of Detective Daniel M. Schaefer at the suppression hearing.

In March 2007, the Cheltenham Township Police Department was investigating the robbery of Ok Ja Choi in Cheltenham Township, Pennsylvania and the subsequent theft of her identity. The investigation uncovered information that implied Mr. Russell's involvement in the criminal activity, which prompted Detective Richard Schaffer to obtain a warrant of Mr. Russell's residence at 1040 E. Howell Street for the search and seizure of:

> Any personal identifiers to include documents, identification cards, personal checks or credit cards for Ok Ja Choi. All cell phones belonging to Kareem Russell. Any documents or records that record the name, phone number or bank account information for Shemar Killen. Any documents, papers, or pictures associated with Latasha Carson. Any documents, personal identification cards, or credit cards, or personal identifiers for any person other than Kareem Russell or anyone who may reside in the house with him.

Gov't Hr'g Ex. 1. An arrest warrant for Mr. Russell was also obtained. Before the officers executed the warrants, they, including Detective Schaefer, were aware that Mr. Russell was a previously convicted felon.

At approximately 8:00 a.m. on April 1, 2007, police officers from the Cheltenham Township Police Department and Philadelphia Police Department arrived at 1040 E. Howell Street to execute the search and arrest warrants. The officers knocked on the front door several times, and upon failing to receive any response, the officers kicked the door open and entered the house.

The officers found and secured four occupants at the residence. After entering the house, the officers first encountered Christopher Russell, Defendant Kareem Russell's brother, descending the stairs of the house while wearing an undershirt and boxer shorts. Officers also found a woman in the nude in another part of the house. Officers discovered Mr. Russell and another woman in the front bedroom of the home.

According to Detective Schaefer's testimony, before he and Detective Schaffer located Mr. Russell and the other woman, Detective Schaefer had heard noises that sounded as if someone had closed and locked the door of the front bedroom while he ascended the house's stairs. When the Detectives tried to open the closed front bedroom door, they found that it was locked. They kicked open the door, and after entering the bedroom, the Detectives saw Mr.

Russell, wearing an undershirt and box shorts, located partway on the bed, appearing to be getting into it. The woman was unclothed in the bed with a sheet covering her. The Detectives took Mr. Russell into custody and handcuffed him. The woman was also handcuffed, and the Detectives escorted her and Mr. Russell downstairs.

After the four occupants were secured, Detectives Schaefer and Schaffer then returned to the front bedroom to determine if there were other individuals located in the room, to ascertain if the area posed any safety issues, and to document the room's appearance before the officers began their search pursuant to the search warrant. During this survey of the room, officers searched under the bed and looked inside the closet to determine if anyone was hiding at those locations. At this time, the Detectives found drug paraphernalia in the room, and documents, such as letters, tax forms, and other papers on which Mr. Russell's name and other individuals' names appeared. While surveying the interior of the bedroom's closet, Detective Schaefer saw the back grip of a gun situated in the bottom half of a pile of unfolded clothing that included several pairs men's boxer shorts located on the closet's top shelf.[1] The gun ultimately was identified as a Smith & Wesson Sigma .40 caliber pistol.

---

[1] Detective Schaefer testified that he looked inside the front bedroom's closet and saw a gun "on a shelf in the closet underneath some clothing." Hr'g Tr. at 11:10. During the suppression hearing, the Court admitted Government Exhibits 2A and 2B, which Detective Schaefer testified were color copies of two photographs that he took of the closet in the front bedroom. While looking at Government Exhibit 2A, a copy of a photograph depicting the top shelf of the closet on which the pile of clothes rested, the Detective testified that "at the time that I looked in the closet, I could see the back of the grip of the gun underneath the clothing there on the bottom." Hr'g Tr. at 11:22-23. The Court notes that the quality of the copy of the photograph does not permit a viewer to discern the gun in Government Exhibit 2A; however, Detective Schaefer indicated with his hand during his testimony as to the general location in the pile where he saw the gun. Detective Schaefer testified that Government Exhibit 2B, which is a copy of a photograph that is close-up of a portion of the pile of clothing with the grip of the gun fully visible among the clothes, showed the "back of the grip of the gun" as he found the gun in the closet. Hr'g Tr. 12:3-7.

After Detective Schaefer saw the gun, he took it out of the closet and removed the magazine, which contained eight rounds, removed one round from the chamber, and locked the slide back. Detective Schaefer observed there was a serial number on the gun while he unloaded it. He subsequently used the police radio to check if the serial number was listed for a stolen gun with the National Crime Information Center ("NCIC"). Following the serial number check, Detective Schaefer learned that the gun had been stolen from West Columbia, South Carolina. Detective Schaefer testified that the standard operating procedure is to make the gun safe and to run a gun's serial number with the NCIC when an officer finds a gun while executing a search warrant that did not list such an item.

The search of the house was suspended at that time to obtain a second search warrant that included such items as the drug paraphernalia and the gun found in the house. Detective Schaffer went to the station, prepared the second search warrant, and went to the Philadelphia Bail Commissioner to have the warrant signed. The second warrant issued on April 1, 2007 at 11:45 a.m. permitted the seizure of various documents associated with additional individuals, including Ann Garr and Janice Rosenblum, as well as "[a]ny firearms, gun parts, ammunition, or firearm accessories. Any drugs or drug paraphernalia as defined by Pa. Title 35." Gov't Hr'g Ex. 3. Once the second search warrant was obtained, the officers completed their search of the house.

---

Detective Schaefer's testimony that he saw the back of the grip of the gun in the pile of clothing was credible. Although a side-by-side comparison of Exhibits 2A and 2B appears to suggest that at least one or more articles of clothing from the closet's pile of clothing may have changed positions between the times that the two photographs were taken, Detective Schaefer explained that, as the photographer, he moved clothing "just for the picture." Hr'g Tr. 39:12-13. Given Detective Schaefer's testimony, the only evidence (documentary or otherwise) presented during the suppression hearing on the discovery of the gun, the Court finds that Detective Schaefer saw the back of the gun's grip lying in a pile of clothing when he looked inside the front bedroom's closet.

The officers performed an inventory of the property seized pursuant to the two search warrants. A "Receipt/Inventory of Seized Property" form which indicates that the time that the search began as 8:06 a.m. and lists 187 items, identified that Item Number 185 was a ".40 cal Smith + Wesson SW9F pistol (PAD 1569) w/ mg + 8 rnds + 1 in chamber." Gov't Hr'g Ex. 4. A Property Receipt listing only the "S&W Sigma .40 cal pistol (Model #SW9F) (Serial # PAD 1569) with eight rounds in magazine and one from chamber" bears a date of April 1, 2007 and time of 8:40 a.m. Gov't Hr'g Ex. 5.

## LEGAL STANDARD

The Fourth Amendment requires that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. General warrants violate the Fourth Amendment because they present the problem "of a general, exploratory rummaging in a person's belongings." *Andresen v. Maryland*, 427 U.S. 463, 480 (1976). Accordingly, because the search and seizure of evidence pursuant to a warrant are limited to the particular description of the items to be seized, "[i]f the scope of the search exceeds that permitted by the terms of a validly issued warrant . . . the subsequent seizure is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140 (1990).

However, under the plain view doctrine, the "Supreme Court has allowed officers to seize incriminating evidence in plain view during the course of a lawful search because such a seizure "does not involve an intrusion on privacy . . . .'" *United States v. Menon*, 24 F.3d 550, 559 (3d Cir.1994). Because the party seeking an exemption from the Fourth Amendment's warrant requirement bears the burden of proof, the government must show by a preponderance of the evidence that the seizure was permissible under the plain view doctrine. *United States v. Watson*,

No. 07-238, 2009 WL 174135, at *1 (E.D. Pa. Jan. 23, 2009); *United States. v. Karriem*, No. 07-706, 2008 WL 5118200, at *4 (D.N.J. Dec. 4, 2008) (citations omitted)). *See generally United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence." (citation omitted)); *California v. Acevedo*, 500 U.S. 565, 589 (1990)("[B]ecause each exception to the warrant requirement invariably impinges to some extent on the protective purpose of the Fourth Amendment, . . . 'the burden is on those seeking the exemption to show the need for it.'" (citations omitted)). For a seizure of evidence to be valid under the plain view doctrine, three requirements must be met: (1) the officers were lawfully in the position from which they could view the evidence; (2) the incriminating character of the evidence was immediately apparent; and (3) the officers had a lawful right of access to the evidence. *See United States v. Stabile*, 633 F.3d 219, 241 (3d Cir. 2011) (citing *Menon*, 24 F.3d at 559).

**DISCUSSION**

In this case, Mr. Russell argues that the officers exceeded the scope of the first search warrant and that the plain view exception does not apply to justify the seizure of the gun. Mr. Russell does not dispute that the officers were lawfully on the premises[2] and does not dispute that

---

[2] Mr. Russell's counsel recognized this position at the suppression hearing. *See* Hr'g Tr. at 42:16-19.

the officers had a lawful right of access to the object.³ He contends, however, that the incriminating nature of the gun was not immediately apparent.

Contrary to Mr. Russell's argument, the Government has sustained its burden that the "immediately apparent" requirement is satisfied. An object's incriminating character is immediately apparent under the plain view doctrine when officers have probable cause to believe that an object is contraband. *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993) ("If . . . the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object—*i.e.*, if 'its incriminating character [is not] "immediately apparent"'—the plain-view doctrine cannot justify its seizure." (citations omitted)); *see also United States v. Benish*, 5 F.3d 20, 26 (3d Cir. 1993) (upholding a decision that a seizure was proper under the plain view doctrine, because there was "sufficient evidence that [the

---

³ At the hearing, Mr. Russell's counsel acknowledged that the officers were in the "bedrooms lawfully." *See* Hr'g Tr. at 43:1-3. Additionally, Mr. Russell does not appear to raise any argument orally or in the briefing that suggests that the closet where the gun was discovered was an area where items specified on the warrant could not have been located and thus officers would not have had a right to search in the closet.

Indeed, the Court concludes that the closet is a reasonable location where officers could find items specified in the first search warrant, such as documents, records, identification cards, personal checks, and credit cards for certain individuals, and, as such, there was a Fourth Amendment justification for Detective Schaefer to look inside the closet. *See Illinois v. Andreas*, 463 U.S. 765, 772 (1983) ("The plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification . . . . The plain view doctrine is grounded on the proposition that once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost; the owner may retain the incidents of title and possession but not privacy."); *United States v. Miller*, Criminal Action No. 07-663, 2009 WL 466186, at *4 (E.D. Pa. Feb. 24, 2009) ("Since the police searched the premises pursuant to a valid warrant, they were entitled to seize contraband in plain view provided that the evidence was found in a location where one might find [the items identified in the search warrant,] guns, ammunition, ballistics, proof of residency or paperwork in the name of [a certain individual]."); *cf. Menon*, 24 F. 3d at 560 (concluding that "discovered evidence within the scope of the search allowed by the warrant if the agent's search fits within the literal terms of the warrant and is a reasonable means of obtaining the objects described in the warrant").

officer] had probable cause to believe the plant was marijuana at the time the seizure occurred"). Probable cause is a "flexible, common-sense standard" and exists when the facts available to the officer would 'warrant a man of reasonable caution in the belief,' . . . that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (citations omitted).

The facts available to Detective Schaefer at the time he observed the gun were such that there was probable cause to believe that the gun was evidence that a known convicted felon, namely, Mr. Russell, was illegally in possession of a firearm. *See* 18 U.S.C. § 922(g)(1).[4] Detective Schaefer knew that Mr. Russell was a convicted felon who resided at the address at which the search warrant was executed. The Detective also initially discovered Mr. Russell in the locked front bedroom where the gun was found. When Detective Schaefer entered that bedroom, it appeared that Mr. Russell, wearing underclothing, was getting into the bed in which a woman in a state of undress was located. The gun was found in that bedroom's closet in a pile of clothing that contained numerous pairs of men's boxer shorts. Even though Mr. Russell did not occupy the locked bedroom exclusively at the time Detective Schaefer found him, the

---

[4] "Possession" under 18 U.S.C. § 922(g)(1) may be actual or constructive possession. *See United States v. Bellinger*, 461 F.Supp.2d 339, 346 (E.D. Pa. 2006). "Constructive possession exists if an individual knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons. Constructive possession necessarily requires both dominion and control over an object and knowledge of that object's existence." *United States v. Cunningham*, 517 F.3d 175, 178 (3d Cir. 2008) (quoting *United States v. Iafelice*, 978 F.2d 92, 96 (3d Cir.1992)). The closet in which the gun was found was the closet in the bedroom where Mr. Russell was himself found. The Court is satisfied that these circumstances suffice for purposes of the requisite "possession" element here.

8

collective facts that were available to Detective Schaefer provided sufficient basis for probable cause that the gun in the closet was in Mr. Russell's possession illegally.

Additionally, the Court's conclusion is consistent with other courts in this Circuit that have held that the "immediately apparent" requirement was satisfied under circumstances similar to those here. In such cases, courts recognized the applicability of the plain view doctrine because law enforcement officers found guns or ammunition during the execution of valid warrants in the defendant's home and the officers knew the defendant was a convicted felon. *See, e.g.*, *United States v. Smith*, 62 F. App'x 419, 422 (3d Cir. 2003) (unpublished) (finding the seizure of a gun was valid, *inter alia*, because of the plain view doctrine: the "officers were legally at the location of the discovery, and the incriminating nature of the evidence was obvious because they knew he could not legally possess firearms" and the gun was found in the defendant's residence); *United States v. Zareck*, No. 09-168, 2010 WL 5053916, at *18 (W.D. Pa. Dec. 3, 2010) (noting that the "the evidence adduced supports the applicability of the plain view doctrine" because "the officers arrived lawfully at defendant's residence pursuant to a valid search warrant and observed the shot gun in plain view. The incriminating character of the shot gun was immediately apparent because the officer was aware that defendant was a convicted felon who was prohibited from possessing a firearm"); *Pitner v. Murrin*, No. 07-355, 2008 WL 2552807, at *9 (E.D. Pa. June 25, 2008) (concluding that seizure of firearms and marijuana in plain view under beds, in closets, and in cabinet drawers of the defendant's home pursuant to a valid search warrant was valid under the plain view doctrine, and that the "incriminating character of the firearms was . . . 'immediately apparent' to the officers because [the defendant] was on state parole and thus was not permitted to be in possession of firearms"); *United States v.*

9

*Ford*, No. 2:05-cr-71, 2007 WL 1394566, at *4 (W.D. Pa. May 9, 2007) (holding that the plain view doctrine applied because the officers "discovered the subject firearms during the lawful search for the items to be seized as set forth in the search warrant" and "knew of defendant's prior criminal history and were immediately aware that his possession of a firearm would indeed be illegal and evidence of the crime of a felon in possession of a firearm"); *cf. United States v. Dunbar*, No. 06-386, 2007 WL 1451437, at *1-*2 (W.D. Pa. May 15, 2007) (finding that the "immediately apparent" requirement was met because the officer had probable cause to believe that defendant violated 18 U.S.C. § 922(g)(8) because the officer found ammunition on a shelf in the defendant's garage while executing a search warrant and was "aware that defendant had a civil protection from abuse restraining order against him, and knew from his experience that it was against the law for an individual subject to a protection from abuse order to possess ammunition").

Given that the plain view doctrine's three requirements are met here, the Court concludes that the seizure of the gun is valid. It follows that the evidence of the gun is admissible, and the Court need not address the parties' remaining arguments relating to the second search warrant and the good faith exception.

**CONCLUSION**

For the foregoing reasons, the Court denies Mr. Russell's Motion. An Order consistent with this Memorandum follows.

BY THE COURT:

  /s/ Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge
